UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOSE A. RODRIGUEZ,

                    Petitioner,

          v.
                                                        9:16-CV-1037
THOMAS GRIFFIN,

                    Respondent.
_____

APPEARANCES:                              OF COUNSEL:

JOSE A. RODRIGUEZ
Petitioner, pro se
11-B-3913
Green Haven Correctional Facility
P.O. Box 4000
Stormville, New York 12582

HON. BARBARA D. UNDERWOOD              DENNIS A. RAMBAUD, ESQ.
Attorney for Respondent                Ass't Attorney General
Acting New York State Attorney General
The Capitol
Albany, New York 12224

DAVID N. HURD
United States District Judge

## DECISION and ORDER

## I. INTRODUCTION

     Pro se petitioner Jose Rodriguez ("Rodriguez" or "petitioner") seeks a writ of habeas

corpus pursuant to 28 U.S.C. § 2254.  Dkt. No. 2, Petition ("Pet.").[1]

     On December 23, 2016, Rodriguez filed a motion to stay his habeas petition.  Dkt. No.

17.  In that filing, petitioner signaled his intent to raise additional habeas claims.  Respondent

_____

     [1] On August 17, 2016, the petition was transferred from the Southern District of New York to the Northern
District of New York because petitioner's underlying criminal conviction and sentence came from Otsego County,
which is located within the Northern District.  Dkt. No. 5.

Thomas Griffin ("Griffin" or "respondent") opposed the motion to stay. Dkt. No. 19. Upon review, the Court denied petitioner's motion to stay and ordered petitioner to file a motion to amend if he wanted to add new claims to his pending habeas petition. Dkt. No. 20.

On March 6, 2017, in accordance with the Court's direction, Rodriguez filed a motion to amend his habeas petition. Dkt. No. 26. Petitioner also filed a request to stay the habeas proceeding while his writ of *error coram nobis* was pending in state court. Dkt. No. 27. Respondent did not oppose either motion. Dkt. No. 28.

On March 12, 2018, before the Court acted on either the motion to amend or the motion to stay, Rodriguez filed a motion to compel. Dkt. No. 49. In the motion to compel, petitioner seeks the production of certain documents related to the police investigation, namely search warrant applications, search warrants, and premises records of the crime scenes. Dkt. No. 49 at 1.

On April 5, 2017, the Court granted Rodriguez's motions to amend and to stay the proceedings. Dkt. No. 30. Petitioner duly filed his amended petition on May 1, 2017. Dkt. No. 31, Amended Petition ("Am. Pet.").

Thereafter, Rodriguez complied with the Court's order to provide status reports on his state court proceedings and, on June 28, 2017, petitioner informed the Court that his state court remedies had been exhausted. Dkt. No. 35. In accordance with that development, the Court directed a response to the amended petition. *Id.*

Respondent has filed an opposition to Rodriguez's amended petition. Dkt. No. 42, Respondent's Answer ("Ans."); Dkt. No. 42-1, Respondent's Memorandum of Law (R. Memo."); Dkt. Nos. 43-43-5, State Court Records ("SCR"); Dkt. Nos. 43-6-43-9, Transcripts ("T."). Petitioner has filed a reply. Dkt. No. 48, Traverse.

2

For the reasons that follow, Rodriguez's habeas petition and motion to compel are both denied and the petition is dismissed.

## II. RELEVANT BACKGROUND

### A. Overview

The basic facts underlying Rodriguez's criminal conviction are not in dispute. As stated by the Appellate Division:

> Following a lengthy police investigation, [petitioner], a resident of the Bronx, was charged with various crimes arising out of his alleged management of a heroin distribution ring in Otsego County. He was tried by a jury and convicted of the crime of operating as a major trafficker, as well as four counts of criminal sale of a controlled substance in the third degree. County Court denied [petitioner]'s motion to set aside the verdict and sentenced him to a prison term of 20 years with five years of postrelease supervision on the major trafficking count and four five-year prison terms, each with three years of postrelease supervision, on the criminal sale counts, all sentences to be served consecutively.
>
> . . .
>
> The broad outline of the operation revealed by the testimony was that [petitioner]—located in New York City and using the nickname "Flip" instead of his real name—used throw-away cell phones with numbers that frequently changed to maintain contact with numerous individuals in the City of Oneonta, Otsego County, who followed his directions to sell heroin that he supplied to purchasers in that city, and who were paid for their efforts with heroin to support their drug habits. Oneonta narcotics detectives . . . testified to describe their lengthy investigation into [petitioner]'s Oneonta heroin operation, their encounters with the various witnesses and [petitioner]'s ultimate arrest.

*People v. Rodriguez*, 995 N.Y.S.2d 785, 787-89 (3rd Dep't 2014).

### B. Arraignment

On December 17, 2010, Rodriguez was arraigned in Otsego County Court. SCR 495-501. During the arraignment, the court briefly summarized the charges in the indictment

and informed petitioner he had a right to be represented, that counsel could be appointed if he did not have the resources to retain an attorney, and that the proceedings could be adjourned in order for petitioner to secure counsel. SCR 496-97.

In response, Rodriguez indicated on the record that he wanted an attorney but did not have the means to retain one. SCR 497. The County Court stated it would assign petitioner counsel, entered a plea of not guilty on petitioner's behalf, and adjourned the matter to allow petitioner time to meet with his soon-to-be court-appointed attorney. SCR 497-98.

At that time, the People made an application to remand Rodriguez without bail given his risk of flight. SCR 498-99. Petitioner reserved his right to object until he was represented by counsel. SCR 499. Petitioner was remanded without bail pending further proceedings, which were then re-scheduled for January 14, 2011. SCR. 499-500.

On January 14, 2011, Rodriguez was arraigned. Dkt. No. 43-6 at 8-13. Petitioner's court-assigned counsel appeared and represented petitioner at the proceeding. *Id.* at 9-10. However, by that time petitioner had also retained his own attorney, who later served as petitioner's trial counsel. *Id*.

## C. Pre-trial Matters

Based upon speculation that the People "may introduce . . . recorded conversations," Rodriguez's retained counsel made a pre-trial motion for an audibility hearing. SCR 138. In opposition, the People indicated they had "no[ ] inten[tion of] introduc[ing] any recordings on their direct case." SCR 142. The trial court denied petitioner's motion based on the People's representation. SCR 153. The court concluded that any mention of the tapes on the People's direct case would be prohibited. *Id*.

4

Prior to jury selection, Rodriguez's counsel moved to dismiss based on the composition of the jury panel.  T. 1-8.  Petitioner's counsel also moved to change venue given the press attention surrounding petitioner's case.  *Id*.  The trial court denied both motions.  As to venue, the trial court found it had no authority to grant the application—such applications must be submitted in writing directly to the appropriate appellate division.  T. 9.  As to the jury panel's composition, the trial court concluded petitioner failed "to show facts that demonstrate[d] . . . there[ was] . . . a substantial deviation from the requirement[s] of the Judiciary Law."  T. 9.

During jury selection, Rodriguez's trial counsel utilized a jury expert. T. 47.  After the jury was selected, the trial court asked the People and petitioner's trial counsel to hand in the jury questionnaires.  T. 345-46, 356.  Petitioner's trial counsel did not object to returning these questionnaires.  At that time, petitioner's trial counsel also provided the court with notes, though it is unclear from the record whether those notes came from the petitioner, the jury expert, or possibly both.  T. 357-360.

### D.  **The People's Case**

The People relied on the testimony of multiple confidential informants and other cooperating witnesses who made heroin purchases from Rodriguez's dealers in and around Oneonta.  T. 694.  Several of those dealers agreed to cooperate in the instant case for favorable treatment in their own pending criminal cases.  *Id.*

One of the People's cooperating witnesses was Rebecca Kennedy.  T. 691.  Kennedy was incarcerated in the Lakeview Shock Program at the time of the trial.  T. 691-92.  Kennedy met Rodriguez in 2007 when she began buying heroin from him and his friends.  T. 695-97.  She would call petitioner on a cell phone, tell him what she wanted, and petitioner

would direct her to someone in Oneonta that had drugs available.  T. 698.

In 2009, Kennedy began working for Rodriguez.  T. 698-99.  Petitioner would call Kennedy and direct her to where someone was seeking heroin.  T. 699.  Kennedy was compensated for this work with drugs.  *Id.*  Kennedy also traveled to New York City to drop off cash – between $2,000 and $5,000 – and pick up bundles of heroin – usually twenty to thirty bundles per trip.  T. 700-03.  Kennedy estimates she completed this exchange approximately forty to fifty times.  T. 700.

When she was in Oneonta, Kennedy estimated that she was personally selling an average of 80 to 100 bags of heroin per day, at $20 per bag.  T. 704-05.  She had between twenty and thirty regular customers in Oneonta, including confidential informants Chancy Couse, Mark Clark, and Justin Gage.  T. 708-09.  Kennedy would wire the money she received from the sales, via Western Union at various convenience and drug stores, to different names and addresses provided to her by Rodriguez.  T. 705-06.  Kennedy testified that every week or two she would wire one or two thousand dollars per petitioner's directions.  *Id.*

On September 2, 2009, Kennedy sold five bags of heroin to confidential informant ("CI") Chancy Couse.  T. 745-46, 755-61.  CI Couse initiated the sale with a call to CI Mark Clark, the call went to voicemail, and then Kennedy returned the call and provided CI Couse with a location to receive the heroin.  T. 755-56.  CI Couse was given $100 for the buy, fitted with a listening device, and followed by police to the prearranged site.  T. 756-58.  The transaction was monitored:  CI Couse was recorded saying "Here's the money" and Kennedy then exchanged five bags of heroin for the $100.  T. 758.  CI Couse provided the drugs to the police, which later tested positive for heroin.  T. 759-761.

On January 21, 2010, Kennedy sold ten bags of heroin to CI Justin Gage.  T. 746, 773-76.  CI Gage contacted the police asking if he should set up a controlled buy between himself and Kennedy.  T. 773-74.  CI Gage was given $180 for the buy and outfitted with a listening device.  *Id.*  Police followed CI Gage to a parking lot where he awaited further instructions.  T. 774.  CI Gage then received a call from Kennedy, who gave him directions to a house, near the parking lot, where he could go to meet her and buy the heroin.  *Id.*  CI Gage, watched by the police, followed the instructions and arrived at the house.  T. 775.  Once he arrived, Kennedy came out of the house, approached the car, and, after a short negotiation, sold CI Gage ten bags of heroin for $180.  T. 775-76.  The drugs in the bag were later confirmed to be heroin.  T. 834-35.

During cross-examination of the police officer who arrested Kennedy, Rodriguez's trial counsel asked several questions about the officer's knowledge of alleged calls that a man known as "Flip" made to several people, and about the officer's familiarity with Flip's voice.[2]  T. 781-82.  This eventually led the officer to respond that "[he] recognized [Flip's] voice when [the police] did controlled calls [with Flip] in two [other] investigations."  T. 782.

Rodriguez's counsel objected, which was overruled by the trial court because defense counsel had "asked the question."  T. 782-83.  Counsel continued questioning the officer on how he could recognize Flip's voice and the officer answered because "[i]t's a recorded phone call."  T. 783.  Petitioner's counsel moved for a mistrial based on the officer alluding to the existence of the recorded tapes, the mention of which had been prohibited during the People's direct case in the court's pre-trial ruling.  T. 783; SCR 153.  After hearing arguments

---

[2]  Evidence introduced at trial established that other individuals knew Rodriguez by the moniker "Flip."

on the matter (T. 782-87), the trial court denied the motion for a mistrial and opted to issue the following curative instruction:

> I'm going to strike th[e last] answer from the record. I've obviously sustained the objection.
>
> The answer dealt with a purported recording of a call. That answer was objected to and properly so and I ask you and direct you to strike from your mind any mention of there being a recorded telephone call. That is not evidence in this case before you. So as you sit here today, as you move forward in this case, well, as you sit here today there is no evidence before you of any type of recorded phone call.
>
> I don't know what the future will bring because I don't know the evidence, but as we sit here today I tell you there's no evidence before you of a recorded call involving Mr. Rodriguez. So completely put that out of your mind.

T. 792-93.[3]

Another cooperating witness was Jessica Gaston. Beginning in the spring of 2009, and lasting for approximately the next eighteen months, Gaston worked for Rodriguez, who she knew by the alias "Flip." T. 843-46. Gaston would drive down to New York City to pick up heroin and transport it back to Oneonta. T. 845-46. Gaston estimates she made thirty to forty trips to New York City where she would meet Flip, receive between ten to twenty bundles of heroin, and then transport them back to Oneonta with her. *Id.* Gaston generally traveled with someone, often Kennedy. T. 846. Gaston confirmed that Kennedy would take

---

[3] A similar exchange later occurred between the police officer and petitioner's counsel when he asked several questions about the officer's knowledge of the content of a controlled call placed by a CI while in the presence of the officer. T. 1133-34. The officer clarified that at the time the call was made, he heard the parties talking, and he "listened to the [contents of the] call later." T. 1134. Counsel made a motion for sanctions based on the officer's mention of a recorded phone conversation. T. 1135-36. The trial court heard arguments on the matter and reserved decision for after lunch. T. 1136-38. The court explained that a prior ruling prohibited reference to the calls, the first reference was rectified with a curative instruction; however, the second reference was more complex. T. 1139-1140. Accordingly, the court ordered, as a sanction, that count 12 of the indictment be dismissed. T. 1140.

money, specifically "thousands" of dollars, down to New York with her. T. 847.

Gaston also wired money to the Bronx, via Western Union, to different names and addresses pursuant to Rodriguez's direction. T. 847-48. Gaston wired approximately $1,000 to $3,000 to petitioner on three different occasions. T. 848. While Gaston did not directly sell heroin, she acted as an intermediary, calling petitioner on the behalf of potential customers and relaying petitioner's instructions to the customers regarding where and from whom they could purchase heroin. T. 850-53. Gaston was compensated with heroin. T. 848.

On May 5, 2010, Gaston received heroin from one of Rodriguez's dealers for CI John Francis. T. 852-53, 888-892. CI Francis contacted Gaston and asked her to call petitioner and arrange a purchase for him. T. 853. Gaston called petitioner and he sent a dealer to Gaston's house with the heroin. T. 853, 889. Gaston received the heroin, then CI Francis arrived and exchanged $40 for two bags of heroin on Gaston's front porch. T. 853, 889-890. The drugs later tested positive for heroin. T. 891.

A third cooperating witness was Mark Rathburn, who worked briefly for Rodriguez until his arrest in February 2010.[4] T. 904-918. Rathburn first spoke with petitioner on the phone, when he was attempting to contact Kennedy to buy heroin. T. 904-05. Thereafter, Rathburn and petitioner spoke often when Rathburn would call seeking heroin. T. 905-06. Petitioner would direct Rathburn to different places where he was sold heroin by several different individuals. T. 906. Shortly thereafter, Rathburn offered to work for petitioner in exchange for drugs. T. 907-08.

Rodriguez directed Rathburn to pick people up at various homes and bus stations in

---

[4] It is unclear exactly when and for how long Rathburn engaged in certain of these activities.

Albany and Oneonta and give them rides in exchange for drugs. T. 908-910. Rathburn also wired money to different names and locations throughout the Bronx, per petitioner's direction, on approximately a dozen occasions. T. 916-17. During each transaction, Rathburn wired between $8,000 and $10,000 to petitioner. T. 917.

Rodriguez also directed Rathburn to rent an apartment. T. 910. The apartment was used as a stash house for drugs and money. T. 911-13. Petitioner would directly pay, or give money to Rathburn to pay, for the apartment's rent. T. 910-11. Petitioner would also compensate Rathburn $400-$500 per week for keeping the apartment in his name. T. 913.

The arrangement lasted until Rathburn's arrest three weeks later, which came after petitioner instructed Rathburn to go to a location to drop off heroin. T. 913-14. Rathburn was pulled over by police and, at the time, possessed fifty-six bags of heroin. T. 914. The heroin was from petitioner's stash house, about which Rathburn told the police and consented to its search. T. 914-16. Police obtained a warrant, searched the home, and found 250 bags of heroin inside. T. 956-57.

A fourth cooperating witness, Jordan Krone, worked for Rodriguez by attempting to expand petitioner's heroin operation into Albany, New York. T. 1151. Krone would hand out samples of petitioner's heroin in Albany until early 2009, when the demand increased enough that it became lucrative to begin distributing heroin there. T. 1151-53. Krone distributed the samples, and then sold the heroin, pursuant to direction he received from petitioner over the phone. T. 1153, 1158. At the peak of his business, Krone was selling 300-400 bags of heroin every other day. T. 1155.

Krone would replenish his supply by going to New York City, Queens, or the Bronx and meeting Rodriguez. T. 1155-56. While in the city, Krone would also provide petitioner with

the money he earned from the drug sales.  T. 1161-62.  Krone estimated making between thirty and fifty trips to the city to replenish his drug supply (T. 1155) and estimated that he brought down over $100,000 in profit to petitioner in a six-month period (T. 1161-62).  Krone also wired money to different names and addresses, provided by petitioner, on several occasions.  T. 1169-1170.  The most Krone wired at once was $5,000.  T. 1170.

On July 1, 2010, Krone left Albany, at Rodriguez's request, to move to Oneonta and take over petitioner's heroin sales there.  T. 1159-60, 1165.  However, Krone was arrested almost immediately thereafter while trying to make a sale in Oneonta.  T. 1167.

Another cooperating witness, Leo Moore, was acting as a confidential informant on June 15, 2010.  T. 1083-85.  CI Moore called a man he knew as Flip and asked if he could purchase heroin.  T. 1084-85.  Flip told CI Moore to go to several locations before a person arrived in a truck.  T. 966-68.  CI Moore exchanged $100 for five bags of heroin.  T. 968, 1085-86.  CI Moore recognized the dealer as Bobby Colone, who would later be called to testify by the defense.  T. 1086.

At the conclusion of the People's case, Rodriguez's trial counsel "move[d] to dismiss each and every count of the indictment [because t]he People . . . failed to prove a prima facie case, specifically as to counts three through 11 [sic]."  T. 1221.  The trial court reserved on the motion, taking the night to "go through . . . notes carefully [to] make sure that there[ was] sufficient corroboration of the testimony for each witness . . . ."  T. 1225.  Ultimately, the court held that "there[ was] sufficient evidence in the record . . . for the jury to justify a guilty verdict . . . ."  T. 1240.

## E.  The Defense Case

Bobby Colone testified that, on June 15, 2010, he sold five bags of marijuana to Leo

11

Moore, who was acting as a confidential informant at the time.  T. 1228-29.  Colone testified that in his sixty arrests, four felony convictions, and fourteen misdemeanor convictions, he had never been arrested or convicted of possessing or selling heroin.  T. 1219-33.  Colone also stated that he did not have a nickname or alias and did not know, nor had he ever worked for, Rodriguez.  T. 1231-32.

### F.  **The People's Rebuttal**

Krone, a cooperating witness, identified Colone (the defense's witness) and testified that he also knew him by the street aliases of "Ricky Bobby" and "Shake and Bake."  T. 1250. Krone testified that he knew Colone because he had "seen him with [Rodriguez] quite a few times when [he] went down to see him [in New York] and when [Krone] was living in Albany [Colone] came to visit [Krone and] . . .  stayed [in Krone's apartment] . . . for a few days."  T. 1250.

### G.  **Charge Conference, Deliberations, Verdict and Sentence**

Prior to summations, Rodriguez's trial counsel made several motions to dismiss.  First, he moved to dismiss all counts in the indictment, "specifically as to count one [because . . . every person who testified . . . was . . . a co-conspirator[; thus] . . . the People . . . failed to present credible, believable evidence beyond a reasonable doubt as to counts one through 11."  T. 1252.  Additionally, petitioner's trial counsel moved to dismiss counts two, three, and four of the indictment because those counts charged conduct that occurred "before . . . the date the [major drug trafficking] law [under which petitioner was charged] had[ ] been passed."  T. 1253.

The trial court heard extensive argument on the issue.  T. 1253-55.  After a short recess, the court denied Rodriguez's trial counsel's motion.  T. 1255. The court explained that

12

the effective date of the major drug trafficking statute was November 1, 2009. *Id.* Because two counts in the indictment preceded the effective date, the court decided "not . . . to amend the indictment, but . . . to . . . instruct the jury the only time [frame it may consider] is November 1st, 2009 to September 1st . . . [2010]." T. 1256. Notably, the trial court concluded that while "[t]he jury obviously can't consider those counts as evidence supporting the major trafficker [law], . . . they're still separate crimes in their own right and they can consider them as such." *Id*.

Specifically, the trial court instructed the jury that:

> to find [petitioner] guilty of operating as a major trafficker, [the jury] must find beyond a reasonable doubt that between November 1st, 2009 and September 1st, 2010, [petitioner] . . . acted as a director of a controlled substance organization and during this period the controlled substance organization sold . . . one or more controlled substances and that the proceeds collected . . . had an aggregate total value of $75,000.00 or more.

T. 1332.

Summations followed. Prior to Rodriguez's trial counsel's closing statement, the trial court read its instructions to the jury. As relevant here, the instructions stated that:

> Summations provide each lawyer an opportunity to review the evidence and to submit for your consideration the facts, inferences and conclusions that they contend you may properly draw from such evidence.
>
> If you find that a lawyer has accurately summarized and analyzed the evidence and if you find that the inferences and conclusions the lawyer asks you to draw from the evidence are reasonable, logical and consistent, then you may adopt those inferences and conclusions.
>
> But please bear in mind the following. You are the finders of fact. It's for you and you alone to determine the facts from the evidence that you find to be truthful and accurate, so please remember, no matter what the lawyers say to you in their summations, no matter how they say it, these are simply arguments submitted to you for your

consideration.

> Remember that the lawyers are not witnesses in the case. If a lawyer during his summation asserts as a fact something that you find was not based on the evidence, then you must disregard it. You have heard the evidence and you must decide this case based on the evidence as you find it to be and the law as I explain it.

T. 1257-58.

Rodriguez's amended habeas petition alleges that several of the prosecutor's statements made during summation improperly vouched for the credibility of the People's witnesses. Am. Pet. at 13.

In particular, the People made statements about whether Flip was, as characterized by Krone, a "criminal master mind" (T. 1289-90); about what Rodriguez's trial counsel would have the jury believe (T. 1292, 1295-96); about whether a conspiracy theory existed (T. 1293); about whether the People's witnesses were telling the truth (T. 1296); about whether Flip kept drug records (T. 1298); and about how petitioner's trial counsel prepared witnesses (T. 1300).

Rodriguez's trial counsel objected to all these statements. T. 1289-90, 92-93, 1295-96, 1298, 1300. The trial court overruled several of the objections as argument, but also cautioned the prosecutor to be precise with his language (T. 1295-96) and sustained the objections about the drug records and about how Rodriguez's trial counsel prepared his witnesses (T. 1298, 1300).

After deliberating for a day, the jury sent out a note. T. 1340. It is unclear whether the trial court discussed or contemplated with counsel how the note should be handled. However, it is clear that counsel and petitioner had an opportunity to read the note. T. 1340 (petitioner's counsel asking the court to "[g]ive [him] a minute to show the [petitioner] the

14

note" and the court announcing to the jury that the note has been "share[d] . . . with the attorneys").

The note requested a read-back of a portion of the testimony. T. 1340. The portion of the testimony elicited on direct examination was read back and then the trial court asked the jury to consider whether it also wanted to hear a read-back of the cross-examination portion of the testimony. T. 1340-41. No objections or further conversation on this point were had.

Soon thereafter, the trial court received a second note from the jury, this time requesting more read-backs. T. 1342. This time, Rodriguez's trial counsel requested that the entire questioning, both direct and cross, be read as "[i]t [wa]s not proper to stop after direct and ask [the jury] do you want more[?]". *Id.* The court agreed and this time read back both the direct and cross-examination testimony from the two witnesses requested in the note. T. 1342-43.

Ultimately, the jury found Rodriguez guilty of operating as a major trafficker and of four counts of third-degree criminal sale of a controlled substance. T. 1356-59. In particular, petitioner was convicted of the sales that occurred with (1) Rebecca Kennedy on September 2, 2009 and January 21, 2010; (2) Jessica Gaston on May 4, 2010; and (3) Bobby Colone on June 15, 2010.

On December 22, 2011, Rodriguez was sentenced to a consecutive prison term of twenty years for his conviction for operating as a major trafficker and five years for each third-degree sale, to be followed by an aggregate term of five years post-release supervision. S. 17-18. Further, the trial court ordered petitioner to pay fines of $80,000 for his conviction for operating as a major trafficker and $5,000 for each of his third degree sale convictions. *Id.* The Uniform Sentence & Commitment Order, filed by the Clerk of the Court,

15

stated that "[e]arnings are to be withheld from state prison wages for payment of surcharge and fees.  Civil judgments to be entered for fine."  T. 358

### H.  CPL § 330.30

On November 30, 2011, Rodriguez filed a counseled motion to set aside his verdict pursuant to New York Criminal Procedure Law ("CPL") § 330.30.  SCR 1-11.  Petitioner's CPL § 330.30 motion claimed that (1) his conviction was based on legally insufficient evidence; (2) the trial court erred by denying petitioner's oral objection to the composition of the jury panel; (3) the trial court erred in denying petitioner's motion to change venue; (4) the trial court erred by truncating the time it provided petitioner's trial counsel to voir dire prospective jurors; and (5) the trial court erred by seizing the jury notes and jury sheets created by the defense team during jury selection.  SCR 7-10.

On December 22, 2011, the Otsego County Court denied Rodriguez's CPL § 330.30 motion.  SCR 17-20.  The court held that petitioner's renewed motion to set aside the verdict for insufficient evidence was denied for the same reasons stated at the close of the People's case.  SCR 17-18.  Specifically, viewing the evidence in the light most favorable to the prosecution, there was "a valid line of reasoning and permissible inferences from which the jury could rationally conclude that [petitioner] committed the offenses for which he was convicted."  *Id.*

The court denied the motion to set aside the verdict as being against the weight of the evidence because "[a] trial judge does not have the power to change a guilty verdict to a not guilty verdict based on a reassessment of the facts."  SCR 18.  The court also denied the motion to set aside the verdict based on Rodriguez's objection to the jury panel because the challenge was not in writing, a statutory prerequisite.  SCR. 18-19 (citing CPL § 270.10(2)).

16

Similarly, the court denied Rodriguez's motion regarding the change of venue because it too did not fulfill the statutory prerequisites of being timely, in writing, and submitted to the appellate division. SCR 19 (citing CPL § 230.20(2)). Finally, the court denied petitioner's motions with respect to his jury complaints. First, the court held that the voir dire time limitation was proper because petitioner failed to object to the limitation when it was imposed, rendering the issue unpreserved for review. SCR 19 (citing *People v. Smith*, 89 A.D.3d 1126, 1131 (3rd Dep't 2011)). It also found that petitioner's trial counsel did not object at the time the court collected the jury questionnaires and notes. *Id.* Accordingly, that issue was also not properly preserved for further review. *Id.*

## I. Direct Appeal

On December 11, 2013, Rodriguez filed a counseled brief on direct appeal to the Appellate Division, Third Department. SCR 28-107. Petitioner's brief on direct appeal alleged: (1) his conviction for operating as a major trafficker was not supported by legally sufficient evidence and was against the weight of the evidence; (2) the other four crimes of which he was convicted (criminal sale of a controlled substance in the third degree) were not supported by legally sufficient evidence and were against the weight of the evidence; (3) Jordan Krone's testimony should not have been admitted at trial without a prior *Ventimiglia* ruling because it related to uncharged bad acts and was unrelated to any of the charges in the indictment; (4) the trial court erred by effectively amending the indictment with its instruction to the jury about petitioner potentially operating as a major trafficker; (5) his trial counsel was ineffective; and (6) the sentence was harsh and excessive. SCR 28-107.

The Third Department rejected these arguments and affirmed Rodriguez's conviction. *People v. Rodriguez*, 121 A.D.3d 1435, 1444. First, the appellate division found

17

that petitioner's contentions that his conviction were not supported by legally sufficient evidence and were against the weight of the evidence were only preserved "as to the charge of operating as a major trafficker, as [petitioner] specifically raised that claim when he moved to dismiss the trafficking charge at the close of proof, but did not include it in his more general motion to dismiss the other charges." *Id.* at 1436. Despite the failure to preserve the claim, the court went on to address the merits. *Id.* at 1436-1441.

The Third Department explained that a person is guilty of operating as a major trafficker where "he . . . acts as a director [or leader] of a controlled substance organization [of four or more people] during a period of 12 months or less in which the organization sells a controlled substance . . . and the proceeds due or collected . . . have a total value of at least $75,000." *Rodriguez*, 121 A.D.3d at 1436-37. Through the witness testimony, the Third Department concluded "there was adequate corroboration for the testimony of these accomplice witnesses . . . [which] connect[ed] the [petitioner] with the commission of the crime in such a way as may reasonably satisfy the jury that the accomplice was telling the truth." *Id.* at 1439. Specifically, the appellate division found that

> the testimony of both female witnesses was corroborated by that of the narcotics detectives, who testified that they used CIs to make controlled heroin purchases from each of the women, and that these purchases were initiated by contact with [petitioner] or his employees and conducted according to the procedures described by the witnesses.

> The testimony of the first male witness was corroborated by the same two detectives. [One officer] testified that he arrested the witness after observing what appeared to be a drug transaction at a residence in Oneonta and found 56 bags of heroin in his car. After the witness stated that additional heroin could be found in the stash house, [another officer] searched it and found an additional 250 bags. [That officer] further determined that the stash house had been leased in the name of this witness shortly before his arrest.

18

> Corroborative evidence need not prove the commission of the crime, directly link [the petitioner] to the crime or lead exclusively to the inference of the [petitioner]'s guilt. Here, the police testimony confirming certain details of [petitioner]'s alleged operation as described by the accomplices was sufficient to support a reasonable inference that he was involved and to satisfy the minimal corroboration requirements of CPL 60.22(1).

*Rodriguez*, 121 A.D.3d at 1439-1440 (internal quotation marks and citations omitted) (some paragraph breaks added).

Further, the Third Department noted that testimony from another witness (1) confirmed Rodriguez's nickname as "Flip"; (2) confirmed petitioner's operational method of giving instructions to various parties via cell phones; (3) acknowledged the drug ring in Oneonta; and (4) confirmed the method for exchanging drugs and money in New York City and via Western Union wires. *Rodriguez*, 121 A.D.3d at 1440.

Accordingly, "[v]iewing the testimony in the light most favorable to the People, [the appellate court] f[ound] a valid line of reasoning and permissible inferences that could lead rational persons to the conclusion reached by the jury." *Rodriguez*, 121 A.D.3d at 1440-41. The testimony regarding the profits from the heroin proceeds "was more than adequate to satisfy the monetary threshold of $75,000. Further, the testimony of the accomplice witnesses as to their own involvement, that of [petitioner], and that of multiple other persons who they testified also worked for [petitioner] . . . was sufficient to establish . . . a controlled substance organization existed . . . ." *Id.* at 1441.

Lastly, the testimony regarding Rodriguez's "management of the Oneonta operation by . . . supplying the heroin, supervising and directing the workers, communicating with buyers and sellers to schedule heroin transaction, and collecting the proceeds sufficiently established that he was a . . . leader of the organization." *Rodriguez*, 121 A.D.3d at 1441.

Allegations that the witnesses were not credible "were vigorously explored in cross-examination , and the jury was free to credit or discredit their testimony as it saw fit," which is a determination that the Third Department held required deference as it "was in accord with the weight of the evidence." *Id.*

With respect to each individual sale, the Third Department also held that each of these four convictions were supported by sufficient evidence. *Rodriguez*, 121 A.D.3d at 1441-42. The first two convictions were supported by testimony regarding the September 2009 and January 2010 controlled buys. The witness stated "that [petitioner] was the supplier of the heroin that [the witness] sold during [the two controlled buys] . . . [thus] the jury could reasonably have inferred that [petitioner] aided both sales by supplying the heroin." *Id.* at 1442.

The third conviction arose from the May 2010 controlled buy whereupon the witness testified that she sold a CI drugs at her home after she "contact[ed petitioner] to arrange the sale . . . and . . . [petitioner] then sent a third party to her house – thus establishing [petitioner's] assistance in the sale." *Rodriguez*, 121 A.D.3d at 1442.

The fourth conviction stemmed from the June 2010 controlled buy where the jury believed the credibility of a CI and officer who testified to a phone call to petitioner to arrange to buy heroin, and a subsequent sale, which the jury determined to be true. *Rodriguez*, 121 A.D.3d at 1442. Giving "the jury's determinations appropriate deference, [the court] f[ound] that the weight of the evidence support[ed] all four convictions." *Id.* 1443.

Next, with regard to the *Ventimiglia* claim, the Third Department found Rodriguez's contentions meritless as "no . . . hearing was required . . . as the testimony of [Krone] . . . did not address uncharged crimes or bad acts and was not introduced to suggest propensity, but

20

was instead relevant to . . . [petitioner's] . . .direct[ion of] a controlled substance organization in Oneonta." *Rodriguez*, 121 A.D.3d at 1440. Further, to the extent petitioner alleges an ineffective assistance of counsel claim based on the failure to protest not having such a hearing, such claims are also meritless "as a [petitioner] is not denied the effective assistance of counsel when counsel fails to raise issues that have little or no chance of succeeding." *Id.*

The Third Department also denied Rodriguez's allegations about the trial court improperly amending the indictment. When the trial court "instructed the jury to base its determination of the trafficking charge only upon evidence of acts transpiring between November 1, 2009 and September 1, 2010 . . . there was no objection to this charge;" accordingly, the claim is unpreserved, "the instruction neither altered the theory of prosecution nor prejudiced [petitioner] on the merits," and it was harmless at best. *Rodriguez*, 121 A.D.3d at 1437 n.2.

The Appellate Division also rejected Rodriguez's contention that his sentence was harsh and excessive. First, the appellate court observed that "the disparity between the sentence imposed . . . and a shorter sentence offered by the People . . . without more, does not demonstrate . . . improper[] punish[ment] for exercising [petitioner's] right to go to trial." *Rodriguez*, 121 A.D.3d at 1437.

Further, the court noted that the "[trial c]ourt was authorized to impose a maximum indeterminate life term with a minimum of 15 to 25 years . . . but instead elected to sentence [petitioner] to a determinate term of 20 years, the maximum term permitted under th[at statutory option]. *Rodriguez*, 121 A.D.3d at 1437. This decision came after the trial court provided extensive rationalization for why it rejected petitioner's plea for leniency "including

the serious harm caused by [petitioner's] conduct to the affected individuals and the community, [petitioner's] failure to show remorse or insight, his extensive prior criminal history – which included a previous conviction for selling heroin in Oneonta – and his criminal character as revealed by these factors." *Id.* Any mistake the trial court made in not putting express findings on the record was rectified by "the court's detailed remarks," resulting in the Third Department's decision refusing to vacate the sentence. *Id.* at 1443-44.

On November 17, 2014, Rodriguez sent a counseled application seeking leave to appeal the Third Department's ruling to the New York Court of Appeals. SCR 193-200. According to the application, leave to appeal further was "being sought on the grounds that the lower court misapplied the law with respect to the need to corroborate accomplice testimony[.]" SCR 194.

On January 24, 2015, the Court of Appeals denied leave to appeal. SCR 203; *see also* 24 N.Y.3d 1122 (2015). A subsequently filed motion for reconsideration (SCR 204-06) was also denied by the Court of Appeals on May 20, 2015. SCR207; *see also People v. Rodriguez*, 25 N.Y.3d 1076 (2015).

### M. <u>CPL § 440.20</u>

Rodriguez, by now acting *pro se*, moved in Otsego County Court to vacate his sentence pursuant to CPL § 440.20 on the grounds that (1) the trial court erred, pursuant to Penal Law § 80.25(1) and CPL § 380.20, in failing to specify which counts or charges were to run consecutively or concurrently; (2) the trial court erred in ordering that the criminal sale counts to run consecutively; (3) petitioner's due process rights were violated when the court clerk entered information onto the Uniform Sentence and Commitment Order; (4) the trial court erred in relying on incorrect information provided by the People during petitioner's

22

sentencing; (5) double jeopardy was violated when petitioner was twice-punished for the same crimes; and (6) the fines were excessive. SCR 243, 245-265.

The court denied the motion. SCR 385-89. First, the court held that "the sentencing minutes . . . make clear that the [trial] court complied with the statutory requirements governing sentences for convictions upon multiple counts of an accusatory instrument." SCR 385-86.

Further, the court found "[t]he People have met their burden of establishing the legality of sentence by relying on facts adduced at trial which establish . . . that [Rodriguez] orchestrated sales of a narcotic drug . . . to convict[] him as a major trafficker independent of the evidence upon which he was convicted of the sales in the other four counts." SCR 387.

Next, the court denied Rodriguez's claims of an invalid sentence based on the court clerk's notation. The notation, despite defendant's argument to the contrary, makes clear "that civil judgments would be entered for the fines . . . [which] should not be collected from [petitioner's] wages in prison." SCR 388. Accordingly, the notation is correct and "[a]ny erroneous withholding by the Department of Corrections is outside th[e] court's purview." *Id.*

Moreover, the court found that Rodriguez's arguments that the sentence violated his due process rights were meritless. "As [petitioner] concedes, the [c]ourt made clear that it was not considering the advocacy of the District Attorney, but was instead relying on the memoranda which had been submitted." SCR 388.

Lastly, the court found that Rodriguez's arguments that the imposition of a fine and sentence of imprisonment violated double jeopardy were also meritless given the statutory provisions of the Penal and Criminal Procedure Law. SCR 388. "Further, the amounts of the fines were not excessive and were well within the limits set by law." SCR 389.

23

On October 2, 2015, Rodriguez filed for leave to appeal this unfavorable decision.  SCR 390-409.

On November 24, 2015, the Third Department denied Rodriguez's application.  SCR 410.  Petitioner subsequently requested, and was denied, reconsideration of the application.  SCR 411-14.

## N.  First Coram Nobis Petition

On January 6, 2016, Rodriguez filed a *pro se* coram nobis petition with the Third Department alleging that his appellate counsel was ineffective.  SCR 415-640.  Specifically, petitioner contended appellate counsel was ineffective for failing to argue that:  (1) petitioner was denied his due process rights by not having counsel at his arraignment; (2) the trial court erred in its response to a jury note; and (3) the prosecutor committed various forms of misconduct by withholding information, ignoring pre-trial rulings on evidence admissibility, and making improper statements during his summation.  SCR 415-640.

Rodriguez further argued that his appellate counsel's performance was deficient when he failed to argue that petitioner's trial counsel was ineffective for (1) failing to challenge, through timely objection, the trial court's instruction on accessorial liability; (2) failing to request a missing witness charge; (3) failing to argue that admission of the narcotic laboratory reports violated petitioner's right to confront his accusers; (4) failing to adequately prepare for the trial; and (5) failing to object to a variety of alleged errors at sentencing.  *Id.*

On March 11, 2016, the Third Department summarily denied Rodriguez's *coram nobis* petition.  SCR 641.

On April 4, 2016, Rodriguez sought permission to appeal the denial of his *coram nobis* petition from the Court of Appeals.  SCR 642-650.  The Court of Appeals denied petitioner's

application on July 28, 2016. SCR 651.

### O. <u>Motion To Vacate Pursuant to CPLR §§ 317 and 5015(a)(4)</u>

On March 16, 2016, Rodriguez filed a *pro se* motion seeking to vacate the civil judgments entered on the fines imposed by the sentencing court. SCR 652-661. Petitioner alleged he was never served with written notice of the entry of judgments by the County Clerk on January 13, 2012. *Id.*

On May 5, 2016, the Otsego County Court denied Rodriguez's motion. SCR 726-27. The court held "that the motion ha[d] absolutely no basis in fact or law [as petitioner] was present at all times throughout the [sentencing] proceedings . . . wherein the District Attorney was authorized by the court to submit civil judgments on the fines for each conviction." SCR 726. Entry of the judgment was compliant with the Criminal Procedure Law. *Id.* Thus, petitioner's motion was denied and dismissed. SCR 727.

Rodriguez then filed a counseled appeal of this decision to the Third Department, along with a *pro se* supplemental brief. SCR 728-743. The Third Department rejected the appeal and affirmed. *People v. Rodriguez*, 158 A.D.3d 956, 957 (3rd Dep't 2018).

In affirming, the Appellate Division found that "CPL § 420.10 provides a mechanism by which a criminal fine may be collected in the same manner as a judgment in a civil action." *Rodriguez*, 158 A.D.3d at 957. To the extent that Rodriguez alleges he was unable to challenge what happened during his sentencing hearing, the court held such contentions were unpreserved as he failed to timely object. *Id.*

Further, the Third Department held such matters to be "ministerial matter[s] required by statute and any purported failure to serve [petitioner] with a copy of the judgments and notice of their entry does not warrant vacatur of those judgments." *Rodriguez*, 158 A.D.3d at

25

957. Lastly, the court held Rodriguez "failed to demonstrate . . . how County Court lacked personal or subject matter jurisdiction to impose the fines and order that they be entered as civil judgments or to establish any other basis [for] . . . vacatur of the . . . judgments." *Id.*

## P. Second *Coram Nobis* Petition

On December 15, 2016, Rodriguez filed a second *pro se* writ for *coram nobis* with the Appellate Division. SCR 749-760. Petitioner alleged that his appellate counsel was deficient in failing to challenge the trial court's denial of petitioner's CPL § 330.30 motion when appellate counsel (1) failed to challenge the perceived deficiencies in jury selection and (2) failed to object to trial counsel's failure to contest the deficiencies. *Id.*

The Appellate Division summarily denied this second *coram nobis* petition. SCR 815. Rodriguez sought reargument (SCR 816-823), which was request denied (SCR 824), and then petitioner appealed the denial to the Court of Appeals (SCR 825-832), which denied his application for leave to appeal (SCR 833). Having completed all of his state court proceedings, petitioner returned to this Court for habeas review.

## III. THE PETITION

Rodriguez seeks habeas relief on the following grounds: (1) his convictions were secured with legally insufficient evidence and the verdicts were against the weight of the evidence; (2) the trial court erred in admitting evidence of uncharged crimes and his trial counsel was ineffective for failing to object to the admission of such evidence; (3) the trial court erred in instructing the jury regarding the applicable time period to consider for petitioner's drug trafficking charge, which improperly and unilaterally amended the indictment; (4) the prosecutor engaged in misconduct by (a) withholding *Brady/Rosario* material, (b) ignoring a pretrial ruling about the admissibility of pre-recorded phone calls, and

26

(c) making improper remarks throughout his summation; (5) the trial court erred in its handling of a jury note; (6) petitioner's sentence was excessive, illegal, and imposed in violation of due process, double jeopardy, and excessive fines clauses of the Constitution; and (7) petitioner was deprived of the effective assistance of appellate counsel.  Am. Pet. at 6-32.

## IV. <u>LEGAL STANDARD</u>

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §§ 2254(d)(1), (2); *Cullen v. Pinholster*, 563 U.S. 170, 180-81, 185 (2011); *Premo v. Moore*, 562 U.S. 115, 120-21 (2011); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt."  *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted)).  The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents.'"  *Nevada v. Jackson*, 569 U.S. 505, 508-09 (2013) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see Metrish v. Lancaster*, 569 U.S. 351, 358

(2013) (explaining that success in a habeas case premised on § 2254(d)(1) requires the petitioner to "show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement'") (quoting *Richter*, 562 U.S. at 103)).

Additionally, the AEDPA foreclosed "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Parker v. Matthews*, 567 U.S. 37, 38 (2012) (per curiam) (quoting *Renico,* 559 U.S. at 779). In other words, a state court's findings are not unreasonable under § 2254(d)(2) simply because a federal habeas court reviewing the claim in the first instance would have reached a different conclusion. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Rather, "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable–a substantially higher threshold." *Schriro*, 550 U.S. at 473.

Federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with "clear and convincing evidence." *Schriro*, 550 U.S. at 473-74 (quoting 28 U.S.C. § 2254(e)(1)). "A state court decision is based on a clearly erroneous factual determination if the state court failed to weigh all of the relevant evidence before making its factual findings." *Lewis v. Conn. Comm'r of Corr.*, 790 F.3d 109, 121 (2d Cir. 2015) (internal quotation marks omitted). Finally, "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits[.]" *Johnson v. Williams*, 568 U.S. 289, 301 (2013).

## V. DISCUSSION

### A. Weight of the Evidence

Rodriguez asserts that all of his convictions are against the weight of the evidence. Am. Pet. at 6-8. Respondent contends that petitioner has failed to allege a cognizable habeas claim. R. Memo. at 16.

"It is well-settled that claims attacking a verdict as against the weight of the evidence are not cognizable in a federal habeas proceeding." *Kimbrough v. Bradt*, 949 F. Supp. 2d 341, 360 (N.D.N.Y. 2013); *see also McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 Fed. App'x 69, 75 (2d Cir. 2011) ("[T]he argument that the verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus.") (citing cases). Accordingly, petitioner's claims regarding the weight of the evidence are dismissed.

### B. Legal Sufficiency

Rodriguez asserts that the evidence was legally insufficient to support his convictions. Am. Pet. at 6-8. Specifically, petitioner contends that the only evidence available to convict him was from accomplices, without corroboration, and the prima facie elements of all claims were not satisfied. *Id.* Respondent opposes petitioner's claims by arguing they are procedurally barred and substantively meritless. R. Memo. at 16-21.

#### 1. Procedural Default

Substantive review of a habeas claim is prohibited if the state court rested its decision on "'a state-law ground that is independent of the federal question and adequate to support the judgment.'" *Walker v. Martin*, 562 U.S. 307, 315 (2011) (quoting *Beard v. Kindler*, 558 U.S. 53, 55 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).

To qualify as an "adequate" ground, the state law rule must be "firmly established and regularly followed." *Walker*, 562 U.S. at 316 (quotation marks and citation omitted); *Downs v. Lape*, 657 F.3d 97, 101 (2d Cir. 2011) (explaining that habeas review of a state court's application of its own rules is deferential and is focused on whether the challenged ruling "falls within the state's usual practice and is justified by legitimate state interests, not whether the state court ruling was correct."). A rule can be firmly established and regularly followed "even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." *Kindler*, 558 U.S. at 61.

As relevant here, New York law requires defendants to preserve challenges to a state court's legal rulings by objecting at a time when the trial court may act to correct the error. CPL § 470.05(2) (providing that a question of law is presented when "a protest thereto was registered, by the party claiming error, at the time of such ruling . . . or at any subsequent time when the court had an opportunity of effectively changing the same."); *People v. Luperon*, 85 N.Y.2d 71, 78 (1995) (the preservation rule requires, "at the very least, that any matter which a party wishes the appellate court to decide have been brought to the attention of the trial court at a time and in a way that gave the latter the opportunity to remedy the problem and thereby avert reversible error."). "The chief purpose of demanding notice through [specific] objection or motion in a trial court . . . is to bring the claim to the trial court's attention. A general motion fails at this task." *Gray*, 86 N.Y.2d at 20.

The Third Department rejected Rodriguez's legal sufficiency claims, with the exception of his contentions surrounding his conviction under the major trafficking law, as unpreserved and procedurally barred. *Rodriguez*, 121 A.D.3d at 1436.

By way of review, at the close of the People's case Rodriguez's trial counsel "move[d]

to dismiss each and every count of the indictment [because t]he People . . . failed to prove a prima facie case, specifically as to counts three through 11 [*sic*]."  T. 1221.  And prior to summations, petitioner's trial counsel made another motion to dismiss all counts in the indictment, "specifically as to count one [because] . . . every person who testified . . . was . . . a co-conspirator[; thus] . . . the People . . . failed to present credible, believable evidence beyond a reasonable doubt as to counts one through 11."  T. 1252.

The Third Department found the first motion to be a "general motion to dismiss the other charges," *Rodriguez*, 121 A.D.3d at 1436,  which was insufficient to preserve such claims.  *Gray*, 86 N.Y.2d at 20; *see also Calderson v. Perez*, 1:10-CV-2562, 2011 WL 293709, at *24 (S.D.N.Y. Jan. 28, 2011) (explaining the "boilerplate" language within such motions to dismiss, "without [further] explanation" fails to satisfy the preservation requirement) (citing cases).

This finding by the Third Department constitutes an independent and adequate state ground.  *Downs*, 657 F.3d at 104; *Richardson v. Greene*, 497 F.3d 212, 219 (2d Cir. 2007) ("[A]pplication of the state's preservation rule is adequate – i.e. firmly established and regularly followed."); *Santana v. Lee*, No. 9:11-CV-0105 (NAM/TWD), 2015 WL 4207230, at *20 ("The New York preservation rule has been determined to be an adequate and independent state law ground precluding federal habeas review.").  Accordingly, Rodriguez's habeas claim regarding the sufficiency of the evidence of his four individual drug sale convictions is denied as procedurally barred.

The Second Circuit has long held "that the contemporaneous objection rule is a firmly established and regularly followed New York procedural rule . . . [and] constitutes an independent and adequate state law ground for disposing of a claim . . . ."  *Downs*, 657 F.3d

31

at 104.  However, in "exceptional cases," the "exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question."  *Lee v. Kemna*, 534 U.S. 362, 376 (2002); *see Cotto v. Herbert*, 331 F.3d 217, 239 (2d Cir. 2003) (quoting *Lee*, 534 U.S. at 376).

In determining whether the application of an independent state rule was "exorbitant," a reviewing court should consider:  (1) whether the alleged procedural violation was actually relied upon by the trial court and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state case law required compliance with the rule in the specific circumstances; and (3) whether petitioner had "substantially complied" with the rule given the "realities of trial," and whether demanding perfect compliance with the rule would serve a legitimate governmental interest.  *Garvey v. Duncan*, 485 F.3d 709, 714 (2d Cir. 2007) (quoting *Cotto*, 331 F.3d at 240).[5]

Upon review of these factors, the application of this procedural bar was not exorbitant in Rodriguez's case.  On the contrary, the Appellate Division's application of the preservation rule to bar petitioner's legal sufficiency claims was consistent with the state's usual practice,[6] and the record supports the appellate court's conclusion that these claims were not properly raised in the trial court.  T. 1221, 1252; *see Sanchez v. Lee*, 1:10-CV-7719, 2011 WL 924859, at *18 (S.D.N.Y. Mar. 16, 2011) ("[D]istrict court decisions within the Circuit have

---

[5]  The *Cotto* factors are not all determinative, but are a guide to evaluate the state's interest in a particular rule in the circumstances of a particular case.  *Garvey*, 485 F.3d at 714.

[6]  "New York courts have consistently held that a general motion to dismiss does not preserve a challenge to the legal sufficiency of the evidence[.]"  *Brito v. Phillips*, 485 F. Supp. 2d 357, 363 (S.D.N.Y. 2007) (citing New York cases holding the same with regard to depraved indifference convictions; *see also People v. Hawkins*, 11 N.Y.3d 484, 492 (2008) (explaining the preservation rule requires a "specifically directed [argument] at the error being urged [because] . . . general motions simply do not create questions of law for th[s] Court[ of Appeal]'s review").

upheld as an adequate and independent state ground New York's rule that general motions to dismiss that do not set forth the specific grounds for the alleged insufficiency of the evidence fail to preserve the issue[.]") (citing cases). Accordingly, petitioner's cause of action is not appropriately classified as an exceptional case.

Further, because the Appellate Division also invoked this preservation rule with respect to Rodriguez's challenges to four of his convictions, federal habeas review of these convictions is barred unless he can show (1) cause for the default and (2) actual resulting prejudice, or petitioner can show that the denial of habeas relief would result in a fundamental miscarriage of justice, i.e., that he or she is actually innocent. *House*, 547 U.S. at 536-39; *Schlup*, 513 U.S. at 327.

To establish cause, a petitioner must show that some objective external factor impeded his ability to comply with the relevant procedural rule. *Maples*, 565 U.S. at 280; *Coleman*, 501 U.S. at 753. If a petitioner fails to establish cause, a court need not decide whether he suffered actual prejudice, because federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated. *See Murray*, 477 U.S. at 496 (referring to the "cause-and-prejudice standard"); *Stepney*, 760 F.2d at 45. Rodriguez has not asserted that cause for the default exists or that he is actually innocent and therefore review is barred.[7]

Notably, even if the state court proceeds to consider the merits of an unpreserved claim, as it did here, its reliance on a procedural ground as one basis for the denial of the

---

[7] With respect to the bar of procedural default, cause can be demonstrated, "in certain circumstances[, by] counsel's ineffectiveness in failing [to] properly preserve [a] claim for review in state court . . . ." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citations omitted). Although petitioner contends that his trial counsel was ineffective, this claim is without merit for reasons discussed *infra* and is thus insufficient to establish cause.

33

claim still operates to preclude habeas review. *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) ("[A] state court need not fear reaching the merits of a federal claim in an alternative holding" because "the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.") (emphasis in original); *Fama v. Commissioner of Corr. Servs.*, 235 F.3d 804, 810-11 & n. 4 (2d Cir. 2000) ("[W]here a state court says that a claim is 'not preserved for appellate review' and then ruled 'in any event' on the merits, such a claim is not preserved").  Accordingly, petitioner's claim with regard to his four drug convictions is procedurally barred and habeas relief is precluded.

### 2. **Merits**

Regardless of whether Rodriguez could overcome the procedural bar just discussed or whether he continued with only a habeas challenge to his major drug trafficker conviction, all of petitioner's habeas claims would still fail because they are meritless.

"[T]he critical inquiry on [the] review of the sufficiency of the evidence . . .  [is] whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).  The reviewing court must determine if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original).

In so doing, the reviewing court must be mindful that, when "faced with a record of historical facts that supports conflicting inferences [it] must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Cavazos v. Smith*, 565 U.S. 1, 7 (2011)

(internal quotation marks and citations omitted).  In seeking habeas corpus review, a petitioner who claims that the evidence was insufficient to sustain a conviction bears a "very heavy burden."  *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000).

Rodriguez claims that his major drug trafficking conviction was not supported by legally sufficient evidence because the prosecution failed to establish the requisite monetary element for the crime and all of the proof came from accomplices without any other independent corroboration.  Am. Pet. at 6.

In order to prove that Rodriguez was a major drug trafficker, the jury was required to find, beyond a reasonable doubt, that petitioner "act[ed] as a director of a controlled substance organization [of four or more persons engaged in a common felonious purpose] during a period of 12 months or less in which the organization sells controlled . . . substances, and the proceeds due or collected . . . have a total value of at least $75,000."  *Rodriguez*, 121 A.D.3d at 1436.

The Appellate Division found that the collective testimony of "witnesses who had allegedly purchased heroin from [Rodriguez] and/or worked for him by selling, distributing and delivering heroin," established sufficient evidence to sustain the conviction.  *Id.* at 1437, 1440-41.  Specifically, with regard to the monetary component, one witness's testimony could have led the jury to find "that she sold over $150,000 worth of heroin at [petitioner's] behest between November 2009 and 2010."  *Id.* at 1438.  Another witness testified that he "made approximately a dozen $8,000 to $10,000 wire transfers to New York City addresses supplied by [petitioner]."  *Id.* at 1439.

Of course, the jury has the ability to, and ultimately did, credit this witness testimony and the Third Department reasonably and correctly deferred to the jury's decision in

35

concluding that this "was more than adequate to satisfy the monetary threshold of $75,000." *Rodriguez*, 121 A.D.3d at 1441.

Given that there is no clear and convincing evidence presented to disturb these credibility determinations, they will retain their presumption of correctness and remain. *See e.g., Huber v. Schriver*, 140 F. Supp. 2d 265, 277 (E.D.N.Y. 2001) ("[U]nder both . . . state law . . . and federal law, issues of credibility, as well as the weight to be given to evidence, are questions to be determined by the jury.").

Concerning the controlled substance organization component, trial testimony came from multiple users and employees of Rodriguez, outlining how they would travel to exchange heroin and money, deliver the drugs to various parties in Oneonta, and arrange for drug transactions by phone – deferring to the petitioner regarding who could and could not be a customer and where and between whom such transactions would take place. T. 698-708, 755-761, 773-76, 845-853, 905-916, 1083-86, 1151-1170. The Third Department reasonably concluded that

> the testimony of the accomplice witnesses as to their own involvement, that of [petitioner], and that of multiple other persons who they testified also worked for [petitioner] as seller and drug couriers in the Oneonta heroin operation was sufficient to establish that a controlled substance organization existed [of] . . . four or more persons, each of whom shared in a common purpose to . . . sell[ ] heroin.

*Id.* at 1441.

The Appellate Division further reasonably concluded that testimony "describing [Rodriguez's] management of the Oneonta operation by, among other things, supplying the heroin, supervising and directing the workers, communicating with buyers and sellers to schedule heroin transactions, and collecting the proceeds sufficiently established

36

[petitioner] . . . was a 'principal administrator, organizer or leader of the organization." *Rodriguez*, 121 A.D.3d at 1441. Accordingly, "[v]iewing the testimony in the light most favorable to the People, [there was] . . . a valid line of reasoning and permissible inferences that could lead rational persons to the conclusion reached by the jury." *Id.* at 1440-41.

Similarly, the Third Department reasonably concluded that, viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to establish that Rodriguez "knowingly and unlawfully solicited, requested, commanded, importuned or intentionally aided in the [heroin] transactions." *Rodriguez*, 121 A.D.3d at 1442.

The first two of these convictions arose from controlled buys where "the testimony of the female witness [established] that [Rodriguez] was the supplier of the heroin that she sold during the time periods in question, [thus] the jury could reasonably have inferred that [petitioner] aided both sales by supplying the heroin." *Rodriguez*, 121 A.D.3d at 1442; *see also* T. 699-703 (discussing how the witness would travel to New York City to exchange money for heroin for her to sell in Oneonta at petitioner's direction).

The next of these convictions arose out of a transaction to buy heroin brokered by the witness between the CI and the Rodriguez. *Rodriguez*, 121 A.D.3d at 1442; *see also* T. 852-53 (describing how the deal was brokered). Because petitioner "sent the third party to her house – thus establishing [petitioner's] assistance in the sale," it was reasonable for a jury to convict, and the Third Department to give deference to and affirm that conviction *Rodriguez*, 121 A.D.3d at 1442.

Lastly, the fourth conviction arose from a CI speaking with Rodriguez and listening to petitioner's directions as to where and how much the heroin transaction would be.

37

*Rodriguez*, 121 A.D.3d at 1442; *see also* T. 1083-86. Ultimately, the Third Department concluded that the testimony "presented credibility issues for the jury to resolve [and a]ccording [to] the jury's determinations [and] appropriate deference, [the Third Department] f[ound] the weight of the evidence support[ed] all four convictions." *Id.*

Second-guessing such credibility determinations made by the jury is inappropriate and not cognizable on habeas review. *Huber*, 140 F. Supp. 2d at 277; *see also Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) ("[A]ssessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal[.]").

Rodriguez has advanced two additional arguments in addition to his general legal insufficiency claims, both of which are unavailing. First, petitioner contends that "[t]he prosecutor relied upon uncorroborated accomplice testimony without any independent evidence to corroborate the witnesses' testimony to classify petitioner as a kingpin." Am. Pet. at 6. However, the "federal rule is well established that a defendant may be convicted upon the uncorroborated testimony of an accomplice." *United States v. Gordon*, 433 F.2d 313, 314 (2d Cir. 1970).

The evidence presented at trial was sufficient to support Rodriguez's convictions, particularly given the aforementioned deference required. Moreover, petitioner's contentions that "[t]he only evidence against [him] was the incredible testimony . . . from [the] alleged accomplice witnesses[,]" is also unpersuasive. As previously stated, re-examining the credibility determinations made by the jury is inappropriate and not cognizable on habeas review. *Huber*, 140 F. Supp. 2d at 277; *also Maldonado*, 86 F.3d at 35. Accordingly, the petition is denied and dismissed.

## C. <u>IMPROPERLY ADMITTED EVIDENCE</u>

Rodriguez next contends that the trial court erred in allowing Krone to testify.  Am. Pet. at 9.  Specifically, petitioner alleges that "Krone['s] testimony about uncharged crimes committed in Albany County [was improper] . . . without [first holding] a *Ventimiglia* hearing," and contends the court lacked jurisdiction over the uncharged crimes as they occurred in Albany, not Otsego County.  *Id.*  Respondent alleges that these claims are procedurally defaulted and meritless.  R. Memo. at 22-26.

### 1. <u>Exhaustion & Default</u>

Rodriguez's contentions are procedurally barred for two reasons.  First, the Third Department found that petitioner did not lodge any specific objections to the trial court's exercise of jurisdiction over him during any of the court's proceedings and therefore the issue was not preserved.  *Rodriguez*, 121 A.D.3d at 1440.

As discussed above, the denial of a claim by a state court for failure to comply with the preservation rule is an independent and adequate state procedural bar to petitioner's habeas petition.  *Downs*, 657 F.3d at 104; *Richardson*, 497 F.3d at 219; *Santana*, 2015 WL 4207230, at *20.[8]  Application of this preservation rule is consistent with the state's usual practice and the record supports the appellate court's conclusion that the claims were not raised in the trial court.  T. 1253.  Accordingly, application of the procedural bar is appropriate.  *See Sanchez*, 2011 WL 924859, at *18.

---

[8] In any event, petitioner's contentions that the trial court lacked jurisdiction are meritless.  Krone's testimony was relevant to demonstrate the operations occurring in Otsego county and, as such, the County Court had jurisdiction over the crime. *See People v. Guzman*, 153 A.D.3d 1273, 1274-75 (2d Dep't 2017) (explaining that both common law and the New York State Constitution require a defendant "to be tried in the county where the crime was committed . . . .") (citing CPL § 20.40(2)(c)).  Accordingly, the Third Department correctly noted that no evidentiary law was improperly applied.

Rodriguez has not asserted that cause for the default of this claim exists or that he is actually innocent on this basis. Notably, a petitioner seeking federal habeas review must utilize the appropriate state-provided procedural vehicles to exhaust his claims. *Dean*, 753 F.2d at 241.

Throughout the state appellate process, the federal nature of the claims must be identified. *Daye v. Attorney General of State of N.Y.*, 696 F.2d 186, 191 (2d Cir. 1982). As the Second Circuit has explained:

> [T]he ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution, include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Id.* at 194. If a claim is not "fairly presented," it is unexhausted. Where federal courts have found a failure to exhaust, a petitioner's claims are considered procedurally defaulted. *Clark*, 510 F.3d at 390.

Rodriguez's arguments that the trial court erred in failing to hold a *Ventimiglia* hearing, improperly admitted testimony of prior bad acts, and presided over a trial in which it did not have jurisdiction, were all presented to the state court as alleged violations of state law. SR 98-100. Petitioner's presentation did not included any citation to federal cases, did not rely on state cases utilizing a constitutional analysis, and did not assert the claim or pattern of facts in a way to call to mind a federal right. Instead, petitioner relied upon the state's criminal procedure law and cases discussing state jurisdictional concerns at the county level. *Id.* Accordingly, the claims remain unexhausted because the state courts were never

alerted to the constitutional nature of the claims.

Even on the merits, Rodriguez's claim that the trial court erred in admitting Krone's testimony is meritless. "Generally, evidentiary rulings in a state court do not warrant habeas corpus relief, and such relief is available 'only where petitioner can show that the error deprived h[im] of a fundamentally fair trial.'" *Wright v. Duncan*, 31 F. Supp. 3d 378, 416 (N.D.N.Y. 2011) (citing *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983)). Accordingly, to succeed on this claim petitioner must demonstrate "that an evidentiary error amounted to a deprivation of due process . . . so pervasive as to have denied him a fundamentally fair trial." *Id*. (citing *United States v. Agurs*, 427 U.S. 97, 108 (1976)); *accord Collins v. Scully*, 755 F.2d 16, 18 (2d Cir. 1985).

"In determining whether a state court's alleged evidentiary error deprived a petitioner of a fair trial, federal habeas courts engage in a two-part analysis [first] examining (1) whether the trial court's evidentiary ruling was erroneous under state law, and [then] (2) whether the error amounted to the denial of the constitutional right to a fundamentally fair trial. *Taylor v. Connelly*, 18 F. Supp. 3d 242, 257 (E.D.N.Y. 2014) (citing *Wade v. Mantello*, 333 F.3d 51, 59-60 & n.7 (2d Cir. 2003)).

Under New York State law, evidence demonstrating an individual's criminal propensity is generally inadmissible; however, "New York courts frequently admit evidence of prior bad acts, including uncharged crimes, as background material and to complete the narrative of events." *Rodriguez v. Superintendent, Collins Corr. Facility*, 549 F. Supp. 2d 226, 244 (N.D.N.Y. 2008) (internal quotation marks and citations omitted).

As outlined by the Third Department in Rodriguez's case, "no *Ventimiglia* hearing was required, as [Krone's] . . . testimony . . . did not address uncharged crimes or bad acts and

was not introduced to suggest propensity, but was instead relevant to the charge that [petitioner] directed a controlled substance organization in Oneonta." *Rodriguez*, 121 A.D.3d at 1440. Since the admission of the testimony was to further clarify and expand upon petitioner's operations as a major drug trafficker, the evidence was properly admitted, and habeas relief is inappropriate.

Furthermore, because a petitioner is "entitled to one (and only one) appeal to the Appellate Division and one request for leave to appeal to the Court of Appeals," Rodriguez cannot now return to the state courts in an attempt to exhaust his claim. *Aparcio v. Artuz*, 269 F.3d 78, 91 (2d Cir. 2001). Accordingly, "[b]ecause [petitioner] failed to raise his claim in the ordinary appellate process and can now no longer do so, it is procedurally defaulted." *Spence v. Superintendent, Great Meadow Corr. Facility*, 219 F.3d 162, 170 (2d Cir. 2000).

Rodriguez contends that regardless of the reason for this procedural default, he has demonstrated cause—the ineffectiveness of his trial counsel. However, as discussed below, this ineffective-assistance claim is without merit and thus insufficient to establish cause. Accordingly, petitioner's petition must be dismissed.

### 2. Not Cognizable

Even if his petition were properly exhausted, the requested relief to remedy the trial court's decision to admit Krone's testimony would still be barred.

> The Supreme Court has declined to take a position as to whether admission of prior bad acts, even if probative only of the [petitioner]'s propensity to commit a crime, violates due process. *Estelle*, 506 U.S. at 75. In the absence of any clearly established law by the Supreme Court, [petitioner] may not rely on § 2254(d)(1) to save his procedurally barred claim.

42

*Poquee v. Ercole*, No. 9:06-CV-0045 (LEK/DRH), 2007 WL 1218722, at *3 (N.D.N.Y. April 25, 2007).  Accordingly, the petition must also be dismissed for this reason.

### D.  CONSTRUCTIVE AMENDMENT OF THE INDICTMENT

Rodriguez alleges that the trial court violated his rights to due process when it improperly amended the indictment by instructing the jury "not [to] consider any evidence related to the two months before the enactment of the statute."  Am. Pet. at 10.  Specifically, the petitioner contends that "the judge's instructions altered an essential element of the charge . . . [and] the court failed to examine the grand jury transcript to ensure that [it] . . . had sufficient evidence before them to deliver an indictment . . . ."  *Id.*  Respondent argues that petitioner's claims are procedurally defaulted or alternatively barred and, in any event, meritless.  R. Memo. at 26-29.

This argument is also rejected.  As the Appellate Division correctly noted, Rodriguez failed to preserve an objection to the trial court's alleged constructive amendment of the indictment.  Accordingly, an independent and adequate state procedural bar precludes habeas relief.  *Downs*, 657 F.3d at 103.

Specifically, at the close of proof, Rodriguez's counsel drew the trial court's attention to the fact that the law under which petitioner was being prosecuted actually went into effect two months after the time period alleged in the indictment began.  T. 1253.  After hearing arguments, the trial court held that it would instruct the jury to disregard proof during that two month time period and clarify that the time in question for petitioner's alleged drug trafficking was from November 1, 2009 to September 1, 2010.  *Id.* at 1256.  Petitioner's trial counsel did not object to this ruling.

When Rodriguez raised this ground on his direct appeal, the Third Department held

that because "there was no objection to this [jury] charge, [petitioner]'s contention that the instruction was impermissible was not preserved." *Rodriguez*, 121 A.D.3d at 1437 n.2.

"Because petitioner's failure to comply with section CPL 470.05(2) is an independent and adequate state law ground," the Third Department's decision appears to bar federal habeas review of this claim. *Ortiz v. New York*, No. 1:12-CV-1116, 2013 WL 1346249, at *8 (E.D.N.Y. Mar. 31, 2013). And as application of the preservation rule is consistent with the state's usual practice, and the record supports the court's conclusion that the claims were not raised in the trial court, the application of the procedural bar is appropriate. T. 1253; *Sanchez*, 2011 WL 924859, at *18.

As with his other claims, habeas relief could issue even in the face of the procedural bar, if Rodriguez could show cause for the default and actual resulting prejudice, or that the denial of habeas relief would result in a fundamental miscarriage of justice, i.e., that he is actually innocent. *House*, 547 U.S. at 536-39; *Schlup*, 513 U.S. at 327.

But Rodriguez has not asserted that cause for the default exists or that he is actually innocent. Although petitioner raises an ineffective assistance of counsel claim as possible "cause," for the reasons discussed *infra* any ineffective-assistance claim is without merit. For these reasons, the petition must be denied.

### E. **PROSECUTORIAL MISCONDUCT & THE JURY'S NOTE**

Rodriguez alleges that he was deprived of a fair trial because the trial court erred in its response to the prosecutor's misconduct and to a jury note it received. Specifically, petitioner contends that the prosecutor committed misconduct by withholding *Brady/Rosario* material, ignoring pretrial rules, and making improper comments during summations. Am. Pet. at 12-13. Moreover, petitioner contends that when the jury asked for a read back of

certain testimony, the trial court failed to first allow counsel to inspect the note outside the presence of the jury, failed to read the note into the record, and inappropriately (and independently) decided which excerpts of the testimony to read back. *Id.* at 15. Respondent contends that petitioner's arguments are unexhausted and procedurally defaulted, as well as meritless. R. Memo. at 29-38.

Rodriguez alleged in his first *error coram nobis* petition that his appellate counsel was ineffective for failing to argue that the trial court erred in its response to the prosecutorial misconduct (SR 432-37) and the aforementioned jury note (SR 427-432).

However, Rodriguez never asserted an independent claim for relief on these grounds in state court during his *direct* appeal. Thus, "in the *error nobis* motion, petitioner's [aforementioned claims] w[ere] subsumed within a broader claim of ineffective assistance of appellate counsel." *Attawwab v. Gurdich*, No. 1:04-CV-3889, 2007 WL 2120405, at *6 (E.D.N.Y. July 23, 2007).

Importantly, though, the "filing of the *coram nobis* petition did not exhaust [petitioner's] challenge[s] to the[se] underlying state court error[s]." *Miller v. Chappius*, No. 9:16-CV-0512 (TJM/CFH), 2018 WL 2709228, at *8 (N.D.N.Y. Apr. 2, 2018) (citing *Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001)); *see also Zimmerman v. Burge*, 492 F. Supp. 2d 170, 189 (E.D.N.Y. 2007) ("[A] petition for a writ of error *coram nobis* does not exhaust the underlying claims advanced to support the claim of ineffective assistance of appellate counsel."). Accordingly, the claims are unexhausted.

Furthermore, because such claims were available on the record, the appropriate place to argue those claims was during the course of Rodriguez's direct appeal. *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997) (explaining "New York's Criminal Procedure Law mandates

45

that the state court deny any [collateral attack] where the [petitioner] unjustifiably failed to argue such constitutional violation on direct appeal despite a sufficient record").

It bears repeating that Rodriguez is "entitled to one (and only one) appeal to the Appellate Division and one request for leave to appeal to the Court of Appeals," and therefore he cannot return to the state courts in an attempt to exhaust this claim. *Aparcio*, 269 F.3d at 91; *Rush v. Lempke*, 500 F. App'x 12, 15 (2d Cir. 2012) ("The petitioner's failure to raise the claim on direct review also forecloses collateral review in state court."). Accordingly,"[b]ecause [petitioner] failed to raise his claim in the ordinary appellate process and can now no longer do so, it is procedurally defaulted." *Spence*, 219 F.3d at 170.

As with his other claims, Rodriguez appears to contend he has demonstrated "cause" via the ineffectiveness of his appellate counsel. However, as discussed below, this ineffective-assistance claim is without merit and is thus insufficient to establish cause. Accordingly, petitioner's petition must be dismissed.

## F. **SENTENCING**

Rodriguez makes several arguments dealing with various sentencing issues. Petitioner alleges that the sentencing court erred in (1) failing to specify whether his convictions ran concurrently or consecutively and (2) imposing illegally consecutive sentences when they were supposed to be concurrent. Am. Pet. at 16-19. Petitioner also contends that his sentence, both the time he was to be incarcerated and the amount of his corresponding fine, was harsh and excessive. *Id.* at 23, 30-31. Further, petitioner contends that a civil judgment was wrongly imposed upon him without the appropriate notifications, in violation of his Due Process rights and double jeopardy protections, allowing DOCCS to

wrongly withhold his prison wages in satisfaction of the judgment pursuant to an unauthorized notation by the court clerk. *Id.* at 21-22. Respondent contends that petitioner's sentencing arguments are not cognizable and meritless. R. Memo. at 38-45.

Rodriguez's first contention, that the sentencing court failed to specify whether his convictions ran concurrently or consecutively, is flatly refuted by the sentencing transcript. In the denial of petitioner's 440 motion, the court held that petitioner's "[a]rgument is not supported by the sentencing minutes which make clear the court complied with the statutory requirements . . . .". T. 385; *see also* S. 17-18. Accordingly, such claims are meritless.

Rodriguez's remaining contentions regarding the concurrence or consecutiveness of his sentence are inadequate to trigger habeas relief. First, petitioner's argument that the sentencing court erred in imposing consecutive sentences is not cognizable on federal habeas review. *See United States v. McLean*, 287 F.3d 127, 136 (2d Cir. 2002) ("[T]here is no constitutionally cognizable right to concurrent, rather than consecutive, sentences.") (internal quotation marks omitted).

Second, Rodriguez's argument that his sentence is harsh and excessive fails because "no federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *see also Mayerhofer v. Bennett*, No. 9:02-CV-0074 (LEK/VEB), 2007 WL 1624767, at *7 (N.D.N.Y. June 6, 2007) (same); *Taylor v. Connelly*, 18 F. Supp. 3d 242, 268 (E.D.N.Y. 2014) ("An excessive sentence claim may not provide grounds for habeas corpus relief where a petitioner's sentence is within the range prescribed by state law.").

Rodriguez also argues that his sentence was harsh and excessive because the sentence he received after going to trial and being convicted was considerably longer the

sentence offered to him during plea negotiations.  However, as the Appellate Division observed:

> County Court was authorized to impose a maximum indeterminate life term with a minimum term of 15 to 25 years for [petitioner]'s conviction for operating as a major trafficker (see Penal Law §§ 70.00(2)(a); (3)(a)(i); 70.71(5)(b)), but instead elected to sentence [petitioner] to a determinate term of 20 years, the maximum term permitted under this option (see Penal Law § 70.71(2)(b)(i); (5)(c)).

*Rodriguez*, 121 A.D.3d at 1443.  The trial court was also authorized to impose a determinate prison term of between one and nine years for each of the third-degree drug sale convictions.  Penal Law § 70.70(2)(a)(i).  Regardless of what was offered to Rodriguez during his plea deal, or the sentence any other individuals received, petitioner's sentence is only unconstitutional if it falls outside the range prescribed by state law.  *White,* 969 F.2d at 1383.

Rodriguez's consecutive sentences of twenty years for operating as a major trafficker – even if representing the maximum amount of time permissible – along with the five years for each drug sale, fall within the limits set by New York law and therefore petitioner's claim provides no grounds for federal habeas relief.  *See Townsend v. Burke*, 334 U.S. 736, 741 (1948) ("The sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus.").

The same holds true for Rodriguez's allegations about the fine assessed.  The County Court was authorized to impose a fine of up to $100,000 or, alternatively, up to twice petitioner's monetary gain, for his conviction of operating as a major trafficker, as well as $30,000 for each criminal sale conviction.  Penal Law §§ 60.04(4), 60.05(7), 80.00.

Rodriguez was actually fined $80,000 for operating as a major trafficker and $5,000

for each criminal sale, both well below the statutory limits allowed. Accordingly, petitioner's claims provide no grounds for federal habeas relief. *See Townsend*, 334 U.S. at 741.

To the extent Rodriguez has attempted to allege that his sentence violated the Eighth Amendment clause against cruel and unusual punishment, such contentions would also be deemed insufficient to warrant habeas relief.

The Eighth Amendment forbids only extreme sentences which are "grossly disproportionate" to the crime of conviction. *Lockyer v. Andrade,* 538 U.S. 63, 72-73 (2003); *accord, Harmelin v. Michigan*, 501 U.S. 957, 995 (1991); *Rummel v. Estelle*, 445 U.S. 263, 271 (1980).

A sentence that is within the limits of a valid state statute is not cruel and unusual punishment in the constitutional sense. *See White*, 969 F.2d at 1383; *accord, Todd v. Superintendent*, No. 9:08-CV-1209 (NAM), 2009 WL 5216944, at *7 (N.D.N.Y. Dec. 30, 2009) ("A sentence of imprisonment which is within the limits of a valid state statute is simply not cruel and unusual punishment in the constitutional sense."). Accordingly, because Rodriguez's sentence is within the statutory range, it does not offend the Eighth Amendment.

Rodriguez's double jeopardy argument is meritless for similar reasons. Where state lawmakers allow for "a single criminal offense [to] be punished by both a monetary fine and by a term of imprisonment . . . imposition of both a fine and a prison sentence in accordance with such a provision constitute[] a[ ]permissible punishment." *Whalen v. United States*, 445 U.S. 684, 688 (1980). Conversely, where the law provides for one or the other, imposition of both "run[s] afoul of the double jeopardy guarantee of the Constitution." *Id.*

In this case, the Penal Law expressly authorized the imposition of both a fine and sentence of imprisonment, and the Criminal Procedure Law permitted the entry of a civil

judgment to collect said fines. *See* Penal Law § 60.04(4); CPL § 420.10(6)(a). Therefore, because Rodriguez's sentence is within the scope of punishments statutorily permitted, it does not offend the double jeopardy clause.

Rodriguez's last two contentions—that the court clerk included unauthorized notations and failed to properly notify him of the civil judgment—are meritless, as the prior state court decisions in this matter conclusively demonstrate. *See* T. 440, 387-88 ("The order makes clear that only the surcharge and fees were to be withheld by [DOCCS] and that civil judgments would be entered for the fines . . . [and] the fines should not be collected from [petitioner]'s wages in prison."); SR 726-27 (holding that petitioner "was present at all times throughout the proceedings wherein the [court] . . . authorized . . . the . . . civil judgments," and noting that "the judgments were entered in compliance with [the Criminal Procedure Law]."). Whether petitioner has misunderstood or misrepresented the relevant facts, the state court transcripts demonstrate that no violations of state, let alone federal, law have occurred.

### G. <u>INEFFECTIVE ASSISTANCE OF COUNSEL</u>

To demonstrate constitutionally ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of professional reasonableness, and but for counsel's alleged errors, the result of the proceedings would have been different. *Premo v. Moore*, 562 U.S. 115, 121-22 (2011); *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

This standard "must be applied with scrupulous care" in habeas proceedings, because such a claim "can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial [or in pretrial] proceedings[.]" *Premo*, 562 U.S. at 122. "*Strickland* does

not guarantee perfect representation, only a reasonably competent attorney." *Harrington v. Richter*, 562 U.S. 86, 110 (2011) (quoting *Strickland*, 466 U.S. at 687) (internal quotation marks and further citation omitted).

A petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and] that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).  Even if petitioner can establish that counsel was deficient, he still must show that he suffered prejudice.  *Id.* at 693-94.

### 1.  Trial Counsel

Rodriguez contends his trial counsel was ineffective for failing to object to the admissibility of Krone's testimony and for failing to challenge the court's jurisdiction.  Am. Pet. at 11.  Respondent argues that petitioner's contentions are meritless.  R. Memo. at 26.

For the reasons previously discussed above in part C.1, Rodriguez's allegations that his trial counsel should have made arguments regarding Krone's testimony and the County Court's exercise of jurisdiction over him were unavailing.  Representation is not rendered ineffective merely because counsel refuses to make meritless motions.  *See United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995) ("[T]he failure to make a meritless argument does not rise to the level of ineffective assistance . . . . ").  Accordingly, petitioner is not entitled to habeas relief on this basis.

### 2.  Appellate Counsel

Rodriguez also contends that his appellate counsel was ineffective for several reasons.  Specifically, petitioner contends counsel was ineffective for failing to challenge the

(1) fact that petitioner's constitutional rights were violated when he was arraigned without counsel; (2) trial court's errors in handling the jury note; (3) prosecutorial misconduct which occurred when the People failed to produce relevant *Brady/Rosario* material, violated the court's prior ruling on discussing recorded conversations, and improperly vouched for witnesses during his summation; (4) ineffective assistance of trial counsel because trial counsel (a) did not object to the fact that lab experts were not testifying to validate the scientific findings and (b) had a delayed realization that the statute pursuant to which petitioner was being prosecuted became effective two months after the indictment; and (5) manner in which the jury was picked. Am. Pet. at 24-28. The Third Department summarily denied both of petitioner's writs for *error coram nobis*. SR 641, 65, 815, 824, 833.

Upon review, the state court did not unreasonably or incorrectly apply the *Strickland* standard to petitioner's numerous challenges to his appellate representation. In order to prevail on a claim of ineffective assistance of counsel, "petitioner [must] . . . show[] that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).

Rodriguez adopted all four of the arguments that his appellate counsel advanced in his seventy-one page brief to the Appellate Division. By expressly adopting all of these claims in the present petition, it can be inferred that petitioner believed, at a minimum, the representation he received and the claims that were advanced during the course of his appeal were in fact competent and effective. *See Kollar v. Smith*, No. 1:04-CV-10175, 2005 WL 1653883, at *10 (S.D.N.Y. July 12, 2005) (holding that "[n]othing . . . suggest[ed] that [counsel's] . . . efforts were outside the range of professionally competent assistance [where] . . . petitioner reiterate[d] many of the same arguments made by appellate counsel on

appeal").

Further, a review of Rodriguez's ineffective-assistance arguments reveal that they are overwhelmingly frivolous and weak. For example, petitioner asserts that he did not have counsel at arraignment. But that claim is only partially accurate. At the time he was unrepresented, a plea of not guilty was entered and the proceedings were adjourned until petitioner could meet with counsel. SR 497-500; Dkt. No. 43-6 at 8-13.

When evaluating the entire factual record, it is clear that Rodriguez's constitutional rights were not violated by this delay. Petitioner was able to have the benefit of counsel's advice and advocacy at that critical stage in his trial. Nor is there any evidence that the slight delay caused any prejudice. *See People v. Young*, 35 A.D.3d 958, 960 (3rd Dep't 2006) ("[W]hile it was error to arraign [a defendant] in the absence of counsel, this error had no impact on the case as a whole.").

With respect to Rodriguez's prosecutorial misconduct claims, his claim that exculpatory evidence was hidden totally fails to identify how the allegedly "hidden" evidence would have helped him or how this "hidden" evidence was actually unavailable during trial.

With respect to the challenged comments made during the People's summations, even assuming they amounted to improperly vouching for the prosecution's witnesses, those comments were preceded by clear jury instructions that the jury alone determines credibility. Importantly, the law presumes the jury obeyed the trial court's instruction, making these frivolous arguments to advance on appeal. *Weeks v. Angelone*, 528 U.S. 225, 226 (2000).

Similarly meritless is Rodriguez's complaint about his counsel's failure to object to the admission of certain *stipulated* evidence. *See Mills v. Lempke*, No.1:11-CV-0440, 2013 WL

435477, at *56 (W.D.N.Y. Feb. 4, 2013 (holding it was "not ineffective [assistance of counsel] for failing to make a pointless objection to the admission of petitioner's statements which . . . were admitted through stipulation.").

Rodriguez's challenge to the composition of his jury is also deficient.  It was not appropriately asserted and, even if it was, it failed to contain the content necessary to find any sort of bias or discrimination.  *See People v. Branch*, 244 A.D.2d 262, 262 (2d Dep't 1997) (holding the "challenge to the racial composition of the jury panel was waived by [the] failure to make th[e] challenge in writing to the trial court prior to the commencement of jury selection," and that, regardless, the merits were still lacking as the "failure to demonstrate that the claimed underrepresentation of blacks and Hispanics was the result of systematic exclusion . . . would require rejection of [the] challenge")

As previously discussed, counsel is neither incompetent nor ineffective for refusing to advance meritless arguments.  *Kirsh*, 54 F.3d at 1071.  Moreover, to the extent one or more of Rodriguez's proffered arguments about his trial counsel may have been non-frivolous, it remains appellate counsel's job to cull out the weaker arguments and to choose among them.  *See Jones v. Barnes*, 463 U.S. 745, 751 (1983).

Stated another way, a petitioner may not establish ineffective assistance of counsel solely by alleging "that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made."  *Mayo*, 13 F.3d at 533 (citing *Barnes*, 463 U.S. at 754); *see also Figueroa v. Grenier*, No. 1:02-CV-5444, 2005 WL 249001, at *18 (S.D.N.Y. Feb. 3, 2005) ("[C]ounsel is not required to present every claim on behalf of a [petitioner] appealing his or her conviction.").  What is important is that the state court reasonably and correctly found counsel's performance satisfied the *Strickland* standard

54

given the arguments that counsel did choose to advance.

Equally important, Rodriguez has failed to show that any of the alleged errors by counsel prejudiced him. As previously noted, most of the arguments that petitioner contends should have been advanced were weak or even totally meritless. Pursuing such claims would have been prejudicial, as well as improper, because "rais[ing] every colorable issue runs the risk of burying good arguments . . . in a verbal mound made up of strong and weak contentions." *Jones*, 463 U.S. at 753. Accordingly, the Appellate Division did not unreasonably apply clearly established federal law in deciding that appellate counsel had not been ineffective and the petition is, therefore, denied.

## VI. MOTION TO COMPEL

Rodriguez filed a motion to compel seeking disclosure of several documents he contends the police have kept from him. Dkt. No. 49. Specifically, petitioner seeks "Search Warrants (sic) Application (sic), . . . all Search Warrants, . . . [and] all premises records of [the] crime scene (During Drug buy and Search & Seizure)," as well as "all Notes and Rathburn['s] (sic) statement," alleging that these documents contained material evidence. *Id.* at 1. Petitioner states these documents could reveal the identity of a third party or another confidential informant who may "reveal that CI Couse was playing a double agent (working for the police - working for drug dealers) . . . ." *Id.* at 2.

Habeas petitioners are generally "not entitled to discovery as a matter of ordinary course . . . [unless there has been] a showing of good cause." *Drake v. Portuondo*, 321 F.3d 338, 346 (2d Cir. 2003) (quoting *Bracy v. Gramley*, 520 U.S. 899, 904 (1997)) (internal quotation marks omitted).

"In order to show good cause, a petitioner must set forth specific allegations that

55

provide reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." *Cobb v. Unger*, 1:09-CV-0491, 2013 WL 821179, at *2 (W.D.N.Y. Mar. 5, 2013) (internal quotation marks omitted).

Upon review, Rodriguez has failed to establish the good cause required to permit the unusual granting of a discovery request in a habeas petition. Petitioner's argument is based on nothing but speculation and conjecture. He has failed to specifically identify the reasons to believe that these papers exist or would give rise to the information, if the facts were more fully developed, he is hypothesizing he may find within them. Accordingly, petitioner's motion to compel discovery is denied.

## VII. <u>CONCLUSION</u>

Therefore, it is

ORDERED that

1. Petitioner's motion to compel (Dkt. No. 49) is **DENIED**;

2. The amended petition (Dkt. No. 31) is **DENIED AND DISMISSED IN ITS ENTIRETY**;

3. No Certificate of Appealability ("COA") shall issue because petitioner failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2) requires;[9]

4. Any further request for a Certificate of Appealability must be addressed to the Court of Appeals (Fed. R. App. P. 22(b)); and

---

[9] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation" (emphasis in original)).

5.  The Clerk of the Court shall serve a copy of this Decision and Order on the parties in accordance with the Local Rules.

IT IS SO ORDERED.


Dated:  December 11, 2018
        Utica, New York.

_____
United States District Judge